129 Nev., Advance Opinion 100

# IN THE SUPREME COURT OF THE STATE OF NEVADA

MELINDA BOOTH DOGRA AND
JAGDISH DOGRA,
Appellants,
vs.
JANE H. LILES,
Respondent.

No. 59381

**FILED**

DEC 2 6 2013

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a district court order, certified as final under NRCP 54(b), dismissing an action based on lack of personal jurisdiction. Eighth Judicial District Court, Clark County; Linda Marie Bell, Judge.

*Reversed and remanded.*

Law Office of William R. Brenske and William R. Brenske, Las Vegas; Raleigh & Hunt, P.C., and John A. Hunt, Anastasia L. Noe, and Bert E. Wuester, Jr., Las Vegas,
for Appellants.

Barron & Pruitt, LLP, and Peter A. Mazzeo and Jared G. Christensen, North Las Vegas; Lewis & Roca, LLP, and Daniel F. Polsenberg, Las Vegas,
for Respondent.

BEFORE THE COURT EN BANC.[1]

_____

[1]The Honorable Patrick Flanagan, District Judge in the Second Judicial District Court, was designated by the Governor to sit in place of the Honorable Michael L. Douglas, Justice, Nev. Const. art. 6, § 4, who voluntarily recused himself from participation in the decision of this matter.

3/10/14: Corrected per letter to publishers. CJ

13-39243

*OPINION*

By the Court, FLANAGAN, D.J.:

This case arises from a personal injury action filed by appellants Melinda and Jagdish Dogra. They sued respondent Jane H. Liles and her daughter Susan Liles, both California residents, for damages stemming from a car accident in Nevada. The accident occurred when Susan was driving Jane's car.

The central issue in this appeal is whether Jane, a nonresident defendant, is subject to personal jurisdiction in Nevada by virtue of the accident. Additionally, we address whether Jane's filing of a motion to consolidate in a Nevada court waived her right to object to the court's exercise of personal jurisdiction over her. Finally, we examine whether an interpleader action filed by Jane's insurance company subjects its insured—here, Jane—to personal jurisdiction in Nevada.

We hold that a nonresident defendant is not subject to personal jurisdiction in Nevada when the sole basis asserted is his or her adult child's unilateral act of driving the defendant's vehicle in Nevada. Secondly, because the consolidation motion did not implicate the parties' substantive legal rights, we conclude Jane's filing of it did not amount to a request for affirmative relief sufficient to constitute a waiver of the right to object to the court's exercise of personal jurisdiction over her. Finally, we conclude that the interpleader action could subject Jane to jurisdiction in Nevada courts if the insurance company was acting as Jane's agent in filing the action. But because the issue surrounding the interpleader action was not adequately addressed in the district court, we remand so that it can be analyzed under principles of agency.

(O) 1947A

## FACTS AND PROCEDURAL HISTORY

Jane, a California resident, purchased and registered, in California, a Scion for her daughter Susan to use as Susan's primary means of transportation while attending high school and college in that state. Jane made all of the payments on the vehicle, registered it in California in her own name, and placed it on her insurance policy. On the policy, Jane named Susan as the primary driver.

While in college, Susan drove the Scion to Nevada for a weekend trip. While traveling in Nevada on Interstate 15, she lost control of the vehicle and swerved in front of another car. The second car swerved to avoid a collision but crashed into the interstate's median, which caused it to flip over the median and land on the Dogras' car.

As a result of the accident, Jane's insurance company filed an interpleader action in Nevada, leaving the injured parties to settle their respective rights to any money due under the insurance policy. Thereafter, the Dogras and three other sets of plaintiffs separately sued Susan and Jane for negligence and negligent entrustment for damages caused during the accident. In the Dogras' action, Jane moved under NRCP 12(b)(2) to dismiss the complaint due to lack of personal jurisdiction. The Dogras opposed Jane's motion, arguing that Nevada could properly exercise personal jurisdiction over Jane because she had sufficient contacts with Nevada. The district court scheduled a hearing for the parties to present their arguments.

Following the hearing, the district court granted Jane's motion to dismiss. Six days later, Jane and Susan moved to consolidate all lawsuits stemming from the accident, including the Dogras' action. The Dogras then asserted that, by filing the motion to consolidate, Jane became subject to Nevada's jurisdiction. The district court granted the

consolidation motion and concluded that the motion did not subject Jane to Nevada's jurisdiction.

Susan and Jane were subsequently deposed. At Susan's deposition, she testified that Jane did not prohibit her from driving the Scion to Nevada. At Jane's deposition, she testified similarly about the no-restrictions policy. She also testified that she did not remember whether she knew about Susan's trip to Las Vegas before the accident. After obtaining the transcript of Susan's deposition testimony, the Dogras filed a motion for reconsideration and, alternatively, a motion to certify the dismissal order as final pursuant to NRCP 54(b). The Dogras claimed that Susan's deposition testimony constituted new and previously unavailable evidence proving that Jane was subject to Nevada's jurisdiction because she placed no restrictions on Susan's use of the vehicle. After full briefing and a hearing, the district court denied the Dogras' motion for reconsideration, determining the statements Susan made in her deposition were not new and substantially different evidence. The district court granted the Dogras' motion to certify the dismissal order as final pursuant to NRCP 54(b), and this appeal followed.

## DISCUSSION

On appeal, the Dogras contend that the district court erred in determining it lacked personal jurisdiction over Jane. They assert three theories in support of their position: (1) Jane has sufficient minimum contacts with Nevada to subject her to suit here based on the fact that she let Susan use her car in this state; (2) Jane sought affirmative relief in Nevada courts by filing the motion to consolidate, which subjects her to suit here; and (3) Jane acquiesced to the jurisdiction of Nevada courts over this matter when, through her insurer, she filed an interpleader action here.

We review a district court's order regarding jurisdictional issues de novo when the facts are undisputed. *Baker v. Eighth Judicial Dist. Court*, 116 Nev. 527, 531, 999 P.2d 1020, 1023 (2000). We review a district court's factual findings regarding a personal jurisdiction issue for clear error. *Ogawa v. Ogawa*, 125 Nev. 660, 668, 221 P.3d 699, 704 (2009).

*Minimum contacts*

The Dogras assert that Susan's act of driving the Scion in Nevada subjected Jane to Nevada's jurisdiction because she entrusted the vehicle to Susan and did not place any restrictions on Susan's use of the vehicle, which resulted in injury in Nevada. Put more directly, the Dogras argue that Jane, by placing no restrictions on Susan's use of the Scion, specifically authorized Susan to drive to Nevada, thereby creating sufficient minimum contacts with Nevada from which the claim arose. As explained below, we disagree.

Nevada may exercise personal jurisdiction over a nonresident defendant only if doing so does not offend due process. *Trump v. Eighth Judicial Dist. Court*, 109 Nev. 687, 698, 857 P.2d 740, 747 (1993). Due process in this context is rooted in a defendant's "contacts" with the forum state—here, Nevada—and reflects his or her reasonable expectations about the litigation risks associated with those contacts. *See id.* at 699, 857 P.2d at 748 ("The defendant must have sufficient contacts with [Nevada] such that he or she could reasonably anticipate being haled into court there."). As it is classically understood, therefore, due process requires a nonresident defendant to have sufficient "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted). Absent the defendant's acquiescence to a forum state's

jurisdiction, personal jurisdiction occurs in two forms: general and specific. *Trump*, 109 Nev. at 699, 857 P.2d at 748. Because the Dogras do not argue that Nevada has general personal jurisdiction over Jane, we focus exclusively on specific personal jurisdiction.

Unlike general jurisdiction, specific jurisdiction is proper only where "the cause of action arises from the defendant's contacts with the forum." *Id.* Nevada may exercise specific jurisdiction over a nonresident defendant if the defendant "purposefully avails" himself or herself of the protections of Nevada's laws, or purposefully directs her conduct towards Nevada, and the plaintiff's claim actually arises from that purposeful conduct. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Thus, "the mere unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Id.* at 298 (internal quotation marks and citation omitted). Importantly, "[w]hether general or specific, the exercise of personal jurisdiction must also be reasonable." *Emeterio v. Clint Hurt & Assocs., Inc.*, 114 Nev. 1031, 1036, 967 P.2d 432, 436 (1998) (citing *Trump*, 109 Nev. at 703, 857 P.2d at 750).

In this case, Jane's act of buying the Scion and placing no restrictions on Susan's use of it did not amount to purposeful availment of Nevada's laws or purposeful conduct toward Nevada. In car accident cases involving a nonresident's vehicle, courts have determined the nonresident defendant is subject to a forum's jurisdiction when the defendant actually knows his or her car is being operated in the forum state. For example, in *Tavoularis v. Womer*, the New Hampshire Supreme Court held that New Hampshire's exercise of personal jurisdiction over a nonresident defendant was reasonable because he "specifically authorized" his friend's use of his

vehicle in New Hampshire. 462 A.2d 110, 114 (N.H. 1983). In *Stevenson v. Brosdal*, a Florida court held that a nonresident defendant created sufficient minimum contacts with Florida to justify the exercise of personal jurisdiction when he loaned his car to his son knowing that he (the son) would regularly use the car in Florida. 813 So. 2d 1046, 1049 (Fla. Dist. Ct. App. 2002). Additionally, in *Trump* (not a car accident case), this court found that Nevada could reasonably exercise personal jurisdiction over a nonresident defendant where the defendant (and his agent) actively pursued a future employee who lived in Nevada, negotiated an employment agreement with the employee over a period of months while the employee lived in Nevada, and set up a trust in Nevada as part of the agreement. 109 Nev. at 701-02, 957 P.2d at 749-50.

Unlike all of those cases, Nevada does not have specific personal jurisdiction over Jane in this matter because she did not purposefully avail herself of Nevada's laws or direct her conduct towards Nevada. Jane did not specifically authorize Susan to drive the Scion to Nevada, as the defendant did in *Tavoularis*. She did not loan the vehicle to Susan knowing she would regularly use it in Nevada, as the defendant did in *Stevenson*. And she did not purposefully direct her conduct toward Nevada or a Nevada resident, as the defendant did in *Trump*.

Further, to the extent Jane's no-restrictions policy amounted to "allow[ing]" Susan to drive the Scion in Nevada, as the dissent observes, it must also be the case that Jane "allowed" Susan to drive *anywhere* in the United States a highway could deliver her. Under this logic, Jane "allowed" Susan to drive to Nevada, and to Maine, or Alaska, or Florida. And if Susan happened to cause an accident in any of those states or in any state in between, Jane would be subject to specific personal

SUPREME COURT
OF
NEVADA

(O) 1947A

7

jurisdiction therein. Such a result would be unreasonable and would offend due process because it would, in effect, "appoint" the vehicle Jane's "agent for service of process." *World-Wide Volkswagen*, 444 U.S. at 296. To be sure, Jane's only "contact" with Nevada in this case is her purchase of the Scion for Susan, and her failure to place any restrictions on Susan's use of it. She had no other contact with Nevada. To allow Nevada to exercise personal jurisdiction over Jane on these facts would undermine the degree of predictability the Due Process Clause provides to the legal system, which "allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Id.* at 297.[2]

Therefore, because Susan's act of driving to Nevada was a unilateral act unsanctioned by Jane and of which Jane had no specific knowledge, Nevada's exercise of personal jurisdiction over her pursuant to specific jurisdiction would be unreasonable.

*Affirmative relief*

The Dogras also contend the district court erred in determining it lacked personal jurisdiction over Jane on the basis of her filing a motion to consolidate in the Dogras' case. They argue that, by filing the motion, Jane sought affirmative relief from Nevada's courts and

---

[2]Moreover, this case is readily distinguishable from *Budget Rent-A-Car v. Eighth Judicial District Court*, 108 Nev. 483, 835 P.2d 17 (1992), upon which the dissent relies. In that case, the nonresident defendant (Budget Rent-A-Car) expressly prohibited the lessee-driver from traveling outside of California without its written permission. 108 Nev. at 485, 835 P.2d at 18. Jane gave no such express prohibition to Susan in this case.

thereby waived her right to object to Nevada's exercise of jurisdiction. We disagree.

We assume without deciding that seeking affirmative relief from a court subjects a litigant to that court's jurisdiction and cannot simultaneously be done while the litigant objects to the court's exercise of jurisdiction. *See, e.g., S.E.C. v. Ross*, 504 F.3d 1130, 1148 (9th Cir. 2007) ("[A] party cannot simultaneously seek affirmative relief from a court and object to that court's exercise of jurisdiction."). Ordinarily, a litigant seeks affirmative relief when he or she alleges wrongful conduct against another and seeks damages or equitable relief thereon, or defends against an action by denying or asserting defenses to allegations made against him or her. *See, e.g., Black's Law Dictionary* 1404 (9th ed. 2009) (defining "affirmative relief" as "[t]he relief sought by a defendant by raising a counterclaim or cross-claim that could have been maintained independently of the plaintiff's action").

Jane's consolidation motion did none of these things. A review of the record below shows the motion was essentially a case management device employed by Jane (and Susan) to promote efficiency in resolving the various cases, including the Dogras' action, arising from the accident. None of the parties' substantive rights were implicated by the motion. On these facts, we cannot conclude that Jane's consolidation motion amounted to a request for affirmative relief that waived her right to object to personal jurisdiction.[3]

---

[3]In addition, Local Rule 2.50(a)(1) of the Eighth Judicial District Court requires a consolidation motion to be "heard by the judge assigned to the case first commenced." Here, the case first commenced out of the
*continued on next page...*

Further, *Dow Chemical Co. v. Calderon*, 422 F.3d 827 (9th Cir. 2005), cited by the dissent, is not persuasive on this point. In that case, which involved a declaratory judgment action brought by Dow Chemical Company against more than a thousand Nicaraguan citizens, the Ninth Circuit found "personal jurisdiction exists where a defendant also independently seeks *affirmative* relief in a separate action before the same court concerning the same transaction or occurrence." 422 F.3d at 834. The court arrived at this ruling by "assum[ing] without deciding" that it would follow the holdings in two out-of-circuit decisions, *General Contracting & Trading Co. v. Interpole, Inc.*, 940 F.2d 20 (1st Cir. 1991), and *International Transactions Ltd. v. Embotelladora Agral Regionmontana S.A. de C.V.*, 277 F. Supp. 2d 654 (N.D. Tex. 2002). *Id.*

First, *Interpole* and *Embotelladora* are distinguishable from the instant case. In each of those cases, the relevant conduct was performed by *plaintiffs*. In *Interpole*, the court found that the party contesting personal jurisdiction waived its right to do so because it "elected to avail itself of the benefits of the New Hampshire courts *as a plaintiff*" in filing suit against Interpole, Inc., in New Hampshire. *Interpole*, 940 F.2d at 23. Similarly, in *Embotelladora*, the court found that the party contesting personal jurisdiction waived its right to do so because it had previously filed two lawsuits *as a plaintiff* in the same judicial district in which it was contesting jurisdiction. *Embotelladora*, 277 F. Supp. 2d at 668. The court also found those lawsuits arose from the same nucleus of operative facts underlying that case. *Id.*

---

*...continued*

several arising from the accident was the Dogras' case. Thus, Jane was required to file her motion to consolidate in the Dogras' case.

By contrast, here, Jane is a defendant, not a plaintiff. She had not filed a lawsuit against the Dogras or anyone else involved in this case. The "affirmative relief rule" established in those cases cited in *Dow Chemical v. Calderon, supra*, therefore, is inapplicable to this case.

Second, the Ninth Circuit in *Dow Chemical* did not conclusively adopt the holdings in those cases. Rather, it "assume[d] without deciding" that the circuit would follow the holdings. Thus, even though federal authority is relevant here because NRCP 12 is consistent with its federal counterpart, *see Fritz Hansen A/S v. Eighth Judicial Dist. Court*, 116 Nev. 650, 655, 6 P.3d 982, 985 (2000); *Nelson v. Heer*, 121 Nev. 832, 834, 122 P.3d 1252, 1253 (2005) ("[F]ederal decisions involving the Federal Rules of Civil Procedure provide persuasive authority when this court examines its rules."), *Dow Chemical* provides no persuasive authority relevant to this case for us to adopt.

*Interpleader*

Finally, because the Dogras did not argue the issue on appeal adequately, we directed the parties to submit supplemental briefs as to whether the interpleader action filed by Jane's insurance company in Nevada subjected her to personal jurisdiction herein. After considering the supplemental briefs and other authorities, and because we anticipate the need for clarity in this area of the law, we find this question is properly analyzed under an agency theory. *Cf. Tweet v. Webster*, 596 F. Supp. 130, 133 (D. Nev. 1984). In *Tweet*, the plaintiff alleged that Nevada had personal jurisdiction over a nonresident defendant because the defendant's insurance company negotiated a settlement agreement on defendant's behalf in Nevada. The court enumerated three factors crucial to the determination of whether an agency relationship existed arising from the insurance company's actions, thereby subjecting the defendant to

Nevada's jurisdiction: (1) whether the insurer had complete control over settling the claims against the defendant; (2) whether the defendant could "control the method, means or place of settlement negotiations"; and (3) whether the insurer could act in a dual capacity, "the principal purpose of which [was] to protect its own contingent liability under the contract." *Id.* at 133.

The *Tweet* factors are of assistance in resolving this issue. The district court, however, should be the first to analyze the factual question of the control dynamics between insured and insurer, *i.e.*, whether Jane had an agency relationship with her insurance company. *See, e.g., Polo Ralph Lauren, L.P. v. Tropical Shipping & Constr. Co.*, 215 F.3d 1217, 1224 (11th Cir. 2000) (stating "determination of the existence of an agency relationship is a factual question" and declining to resolve an agency issue by making an "exception to the general rule that matters must be presented before the district court in the first instance"). Accordingly, we remand to the district court to address this issue in the first instance under the analytical framework of an agency theory.[4]

---

[4]In addition to whether the Dogras adequately raised the interpleader issue on appeal and whether the question was properly analyzed under an agency theory, our order directing supplemental briefing ordered the parties to discuss the applicability of the Ninth Circuit's analysis in *Methwold International Finance Co. v. Manfredonia*, 481 F. App'x 363, 365 n.1 (9th Cir. 2012), to this question. After a careful review, we conclude the analysis in that case is inapplicable to the interpleader issue. It is merely dicta interpreting dicta; it has no precedential value and therefore should have no persuasive force in any case, including this one.

## CONCLUSION

Based on the foregoing, we hold that Jane is not subject to personal jurisdiction in Nevada by virtue of Susan's unilateral use of the Scion in Nevada and the accident arising from her use, or because she moved to consolidate the several cases stemming from the accident. But Jane might be subject to jurisdiction in Nevada based on her insurance company's filing of the related interpleader action in Nevada. Accordingly, the district court's order granting Jane's motion to dismiss is reversed, and we remand this matter to the district court for consideration of whether, under the principles of agency set forth in *Tweet v. Webster*, the interpleader action filed in Nevada by Jane's insurance company subjected Jane to personal jurisdiction.

_____Flanagan_____, D.J.
Flanagan

We concur:

_____Pickering_____, C.J.
Pickering

_____Hardesty_____, J.
Hardesty

_____Parraguirre_____, J.
Parraguirre

SUPREME COURT
OF
NEVADA

(O) 1947A

GIBBONS, J., with whom CHERRY and SAITTA, JJ., agree, concurring in part and dissenting in part:

I concur with the majority that this case should be remanded regarding the issues surrounding the interpleader action. However, I disagree with the majority's conclusion that the district court lacked specific personal jurisdiction over Jane Liles as a defendant in the Dogras' negligent entrustment action for two reasons. First, Jane acquired minimum contacts with Nevada when she (1) gave a car registered and insured in her name to her daughter, Susan Liles; and (2) allowed Susan to drive it in Nevada, thereby invoking the benefits and protections of Nevada law. Second, Jane impliedly consented to Nevada's jurisdiction when she filed the motion to consolidate and when her insurance company filed an interpleader action on her behalf. Therefore, I would reverse the district court's order dismissing the action against her based upon lack of personal jurisdiction because the district court obtained personal jurisdiction over Jane.

*Jane established minimum contacts with Nevada when she allowed her daughter to drive her car in Nevada*

Specific personal jurisdiction may be exercised over an individual who purposefully avails herself of Nevada's laws or directs her conduct towards Nevada, "and the cause of action arises from that purposeful contact" with Nevada. *Budget Rent-A-Car v. Eighth Judicial Dist. Court*, 108 Nev. 483, 835 P.2d 17 (1992); *Price & Sons v. Second Judicial Dist. Court*, 108 Nev. 387, 390, 831 P.2d 600, 602 (1992).

A. *The Dogras made a prima facie showing of personal jurisdiction to the district court*

When a defendant challenges personal jurisdiction, the plaintiff may meet his or her burden in one of two ways. *Trump v. Eighth*

*Judicial Dist. Court*, 109 Nev. 687, 692, 857 P.2d 740, 743 (1993). The first way requires the plaintiffs to make a prima facie showing of personal jurisdiction prior to trial with "competent evidence of essential facts," and then prove jurisdiction by a preponderance of evidence at trial. *Id.* (internal quotation marks omitted). The plaintiff must produce some evidence in support of all the facts necessary for a finding of personal jurisdiction, and the district court must accept properly supported proffers of evidence as true. *Id.* at 692-93, 856 P.2d at 744. When factual disputes arise, "those disputes must be resolved in favor of the plaintiff." *Id.* at 693, 856 P.2d at 744 (internal quotation marks omitted).

The second way to show personal jurisdiction is for the trial court to hold a full evidentiary hearing on the personal jurisdiction issue prior to trial. *Id.* In such a situation, the plaintiff must prove personal jurisdiction by a preponderance of the evidence and does not receive the same presumption of credibility that it would in a prima facie analysis. *Id.* at 693-94, 856 P.2d at 744-45.

Here, the Dogras used the first method to establish personal jurisdiction. This is evidenced by Jane's motion to dismiss and the subsequent hearing transcripts. The district court's order further confirms this. Therefore, the district court should have resolved factual disputes in favor of the Dogras and accepted all properly supported proffers of evidence as true.

*B. Jane established minimum contacts with Nevada*

Specific jurisdiction exists over a defendant when "the cause of action arises from the defendant's contacts with Nevada." *Budget Rent-A-Car*, 108 Nev. at 486, 835 P.2d at 20. Further, specific jurisdiction exists when the defendant "purposefully avails itself of the privilege of . . . enjoying the protection of the laws of the forum, and the cause of

action arises from the purposeful contact with the forum." *Id.* at 487, 835 P.2d at 20.

Specific jurisdiction does not exist over a defendant when the unilateral activity of another person creates the contact between the defendant and the forum state. *Id.* In *Budget Rent-A-Car*, the rental agreement provided that the renter could not take a rental car out of California without Budget's written permission. *Id.* at 485, 835 P.2d at 18. The renter did not obtain permission to take the car outside of California, and got in an accident while driving in Las Vegas. *Id.* at 487, 835 P.2d at 20. This court determined that Nevada did not have jurisdiction over Budget because Budget did not give permission for the renter to drive the car in Nevada. *Id.* Thus, the unilateral activity of the renter created the contact with Nevada, which was insufficient to invoke specific jurisdiction over Budget. *Id.; see World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980) ("the mere unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State").

A forum state will have jurisdiction over a defendant if the alleged injury occurred there and the defendant authorized the activity that caused the injury. *Tavoularis v. Womer*, 462 A.2d 110, 112 (N.H. 1983). In *Tavoularis*, the defendant authorized his friend to drive defendant's car in New Hampshire to visit family. *Id.* at 111. The New Hampshire Supreme Court held that New Hampshire had specific jurisdiction over the defendant because (1) "it was reasonably foreseeable that the defendant would be sued in New Hampshire for negligently entrusting [his car] to [his friend]," and (2) it was not "fortuitous" that the injury occurred in New Hampshire because the defendant "specifically authorized [his friend] to drive in New Hampshire." *Id.* at 113-14.

However, a defendant can implicitly authorize the activity that causes the injury. *Stevenson v. Brosdal*, 813 So. 2d 1046, 1048 (Fla. Dist. Ct. App. 2002). In *Stevenson*, the defendant, who owned the car, gave his son a car to use. *Id.* The defendant did not specifically authorize the defendant to only use the car in a certain state. *Id.* The defendant knew that his son was living and driving the car in Florida. *Id.* The court found that Florida had jurisdiction over the defendant because the owner was aware the car was in Florida and impliedly consented to his son's use of the car in Florida. *Id.*

Here, Jane purposefully availed herself of Nevada's laws and established minimum contacts with Nevada when she purchased a car for Susan and admittedly did not place any restrictions on where Susan could drive it, thereby allowing Susan to drive the car to Nevada. Similar to *Tavoularis*, Jane authorized Susan to drive to Nevada when she did not place any restrictions on where she could drive the car. Also, like in *Stevenson*, Jane gave Susan a car and knew that she would likely use it if she was to travel anywhere by car. Thus, Jane implicitly consented to Susan's use of the car in Nevada. However, there is a crucial factual dispute as to whether Jane knew about her daughter's trip to Las Vegas. Specifically, Jane did not deny actual knowledge of her daughter's trip to Las Vegas for her friend's birthday party that had been planned for five months. Rather, Jane stated that she could not remember. Susan also could not recall if she told her mother about the trip, even though they talked a number of times before Susan left for Las Vegas. Resolving this factual dispute in favor of the Dogras, the inference arises that Jane must have known about the trip and her failure to disallow Susan from driving the car in Nevada on the day of the accident could be seen as specific authorization for her to do so. By giving the car to Susan with

SUPREME COURT
OF
NEVADA

(O) 1947A

authorization to drive it in Nevada, Jane established minimum contacts with Nevada such that it is reasonable to subject her to a negligent entrustment suit here.

Further, it was foreseeable that Susan would drive to Las Vegas and does not constitute a "mere unilateral activity." Unlike in *Budget Rent-A-Car*, where Budget restricted where the renter could drive without permission and did not give the renter permission to drive out of state, here, Jane did not place any restrictions on Susan's use of the car.[1] Further, Jane never told her daughter she needed permission to take the car out of state, and Susan did not act directly against her mother's instructions. Additionally, when resolving the factual disputes in favor of the Dogras, this further shows that (1) it was foreseeable that Jane could be sued in Nevada, (2) it was not fortuitous that the injury occurred in Nevada because Jane authorized Susan to drive to Nevada, and (3) Susan's driving the car to Nevada was not a "mere unilateral activity." *See Tavoularis*, 462 A.2d at 114.

Additionally, the majority claims that this interpretation "would be unreasonable" and "undermine the . . . predictability [of] the Due Process Clause" because Susan would have been allowed "to drive to Nevada, and to Maine, or Alaska, or Florida." The majority further argues that "it would, in effect, 'appoint' the vehicle Jane's 'agent for service of process'" and undermine the degree of predictability (citing *World-Wide*

---

[1] I agree with the majority that *Budget Rent-A-Car* is "readily distinguishable." As the majority states, "Jane gave no such express prohibition to Susan in this case." However, as noted above, Jane impliedly authorized Susan to drive the car out of state, purposefully availing herself of Nevada's laws.

SUPREME COURT
OF
NEVADA

(O) 1947A

5

*Volkswagen*, 444 U.S. at 296). However, it would be reasonable to conclude that Jane authorized Susan to drive to Nevada, and this interpretation would not result in an unpredictable outcome because of the close proximity of Las Vegas to California, the factual inference that Jane likely knew about the trip, and Jane's failure to prohibit Susan from driving to Nevada.

I would hold that these facts take this case out of the realm of mere foreseeability and provides sufficient facts to establish a prima facie case in favor of exercising personal jurisdiction over Jane. The Dogras would still have to prove specific personal jurisdiction by a preponderance of evidence at trial, with the aid of cross-examination to determine Jane's actual knowledge.

*Jane consented to Nevada's jurisdiction when she filed a motion to consolidate the four district court cases arising from Susan's car accident*

Personal jurisdiction, like other rights, can be waived. *Dow Chem. Co. v. Calderon*, 422 F.3d 827, 831 (9th Cir. 2005). In *Dow Chemical*, the Ninth Circuit recognized that a defendant can give explicit or implied consent to a forum's jurisdiction over her when "a defendant . . . independently seeks *affirmative* relief in a separate action before the same court concerning the same transaction or occurrence." *Id.* A request for affirmative relief may occur before the suit is filed, at the time the suit is brought, or after the suit starts. *Id.*

After the district court dismissed her from the case, Jane filed a motion in the Dogras' action to consolidate all four Nevada district court cases arising from her daughter's car accident. This motion submitted Jane to personal jurisdiction of Nevada courts because it was a request to

the court for affirmative relief and clearly concerned the same transaction or occurrence, the car accident. Therefore, I would reverse and remand this case to the district court for further proceedings on the merits.

_____, J.
Gibbons

We concur:

_____, J.
Cherry

_____, J.
Saitta

SUPREME COURT
OF
NEVADA

(O) 1947A